**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CR-20529-BB**

**UNITED STATES OF AMERICA**

**v.**

**ROMAN SINYAVSKY,**

**Defendant.**

**PRELIMINARY ORDER OF FORFEITURE**

THIS CAUSE is before the Court upon the United States of America's Unopposed Motion for a Preliminary Order of Forfeiture ("Motion"), ECF No. [2], against Defendant Roman Sinyavsky (the "Defendant"). The Court has considered the Motion, the record in the case, and is otherwise fully advised and finds as follows:

On December 4, 2024, the United States filed an Information charging the Defendant in Count 1 with conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") (50 U.S.C. § 1701, *et seq*.) and money laundering (18 U.S.C. § 1956(a)(1)(A)(i)) in violation of 18 U.S.C. § 371. Information, ECF No. 1. The Information also contained forfeiture allegations, which alleged that upon conviction, the Defendant shall forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. *See id.* at 8. The Information alleged that the property subject to forfeiture as a result of the alleged offense includes, but is not limited to, a forfeiture money judgment in the amount of $182,442.45. *See id.*

On January 16, 2025, the Court accepted the Defendant's guilty plea to Count 1 of the Information. *See* Minute Entry, ECF No. 15; Plea Agreement ¶ 1, ECF No. 17. As part of the guilty plea, the Defendant agreed to a forfeiture money judgment in the amount of $182,442.45.

*Id*. ¶ 12.

In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Factual Proffer, ECF No.16. The Factual Proffer also provided a basis for the forfeiture of property. *See id.* at 11. IEEPA, 50 U.S.C. § 1701, et sq., conferred upon the President of the United States the authority to deal with unusual and extraordinary threats to the nation's national security and foreign policy. Factual Proffer at 1, ECF No. 16. Under IEEPA, "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter." 50 U.S.C. § 1705(a); *Id*.

In 2014, pursuant to his authorities under IEEPA, the President issued Executive Order ("E.O.") 13660, which declared a national emergency regarding the Crimea region of Ukraine. E.O. 13660 (Mar. 6, 2014), 79 Fed. Reg. 13,493 (Mar. 10, 2014); *Id*. The national emergency declared in E.O. 13660 regarding the situation in Ukraine has remained in continuous effect since 2014 and was most recently continued for another year commencing March 4, 2024. *Id*.

On multiple occasions, the President expanded the scope of the national emergency declared in E.O. 13660, including through E.O. 13661, E.O. 13662, and E.O. 13685. *Id*. at 2. To implement these Executive Orders, the Department of the Treasury's Office of Foreign Assets Control ("OFAC") issued the Ukraine-Related Sanctions Regulations, 79 Fed. Reg. 26,365-26,373 (May 8, 2014) (codified at 31 C.F.R. Part 589), which were later reissued and renamed the Ukraine-/Russia-Related Sanctions Regulations, 7 Fed. Reg. 26,094-26,119 (May 2, 2022). *Id*.

Relevant here, on December 19, 2014, pursuant to his authorities under IEEPA, the President issued E.O. 13685, which authorized the Secretary of the Treasury, in consultation with

the Secretary of State, to designate persons and block their "property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person (including any foreign branch)." E.O. 13685 § 2, 79 Fed. Reg. 77,357 (Dec. 24, 2014). *Id*. Such blocked property "may not be transferred, paid, exported, withdrawn, or otherwise dealt in." *Id.*

E.O. 13685 prohibits, among other things, (1) "the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to this order," (2) "the receipt of any contribution or provision of funds, goods, or services from any such person," (3) "[a]ny transaction that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in this order," and (4) "[a]ny conspiracy formed to violate any of the prohibitions set forth in this order." *Id*.

The Ukraine-/Russia-Related Sanctions Regulations incorporate by reference the prohibited transactions set forth in E.O. 13685. 31 C.F.R. § 589.201; *Id*. The regulations also provide that the names of persons designated by E.O. 13685, whose property and interests are therefore blocked, are published in the Federal Register and incorporated into OFAC's Specially Designated Nationals and Blocked Persons List ("SDN List"), which is published on OFAC's website. *Id.* at 3.

An individual or entity may not transact with a person on the SDN List without first having obtained authorization or a license from OFAC. *Id*. A violation of IEEPA is a specified unlawful activity for a money laundering offense. *Id*.

<u>Pre-Sanctions</u>

In August 1998, Valeri Vyacheslavovich Abramov and his wife purchased Unit 606 at

2600 Island Boulevard Williams Island in Aventura, Florida, a luxury condominium unit in the Southern District of Florida ("Unit 606"). *Id*. at 4. Beginning in 2000, Abramov and his wife maintained three accounts at Bank-1 in the Southern District of Florida to pay expenses related to Unit 606 (the "Abramov Accounts"). *Id*. The Defendant was listed as a "c/o party", or care of party, for all three accounts. *Id*.

In 2008, Viktor Pavlovich Perevalov and his wife purchased two luxury condominium units in the Southern District of Florida, Units 1616 & 1617 in 10295 Collins Avenue in Bal Harbour, Florida ("Units 1616 & 1617" and together with Unit 606, the "Blocked Properties"). *Id*.

Sanctions

On January 26, 2018, the Department of the Treasury's Office of Foreign Assets Control ("OFAC") imposed sanctions on Abramov and Perevalov (the "January 2018 Sanctions"). *Id*. From then on, Abramov's and Perevalov's property and interests in property in the United States were blocked, and U.S. persons were prohibited from, among other things, providing funds, goods, and services to and for the benefit of Abramov and Perevalov without first having obtained the necessary authorization or license from OFAC. *Id*. at 4-5. On January 26, 2018, the U.S. Department of the Treasury published a press release about the January 2018 Sanctions. *Id*. at 5.

Post-Sanctions

From in or around January 2018 through in or around March 2023, the Defendant conspired with others to violate the January 2018 Sanctions and achieve the conspiracy's objectives. *Id*. Numerous U.S. and foreign media outlets reported on and publicized the January 2018 Sanctions and referenced, by name, Abramov and Perevalov. *Id*. After the January 2018 Sanctions were imposed, neither the Defendant nor any other person obtained an OFAC license to transact with

Abramov, Perevalov, or the Blocked Properties. *Id*.

As detailed below, the Defendant, through and with the legal services of Attorney-1 and Law Firm-1, sought to obscure Abramov's and Perevalov's ownership interests in the Blocked Properties so he could continue transacting in the Blocked Properties. *Id*.

Unit 606

Before and after the January 2018 Sanctions were imposed, the Defendant sought to sell Unit 606 on behalf of Abramov. *Id*. The Defendant learned of Abramov's sanctioning shortly after the January 2018 Sanctions were imposed. *Id*.

On February 5, 2018, an automatic payment of $3,539.23 was made from Abramov's Account at Bank-1 ending in x0627 for the maintenance of Unit 606. *Id*. On February 6, 2018, Bank-1 froze all funds in the Abramov Accounts in response to the January 2018 Sanctions. *Id*.

In March 2018, a Bank-1 employee emailed the Defendant to confirm that the Abramov listed on the accounts was the same as the one on the SDN list. *Id*. at 6. The Defendant confirmed that he was. *Id*. The Bank-1 employee consequently informed the Defendant that "[Abramov] needs to apply for a License, directly to OFAC [] to release the funds in the [Abramov accounts]." *Id*. On March 30, 2018, the Defendant asked Attorney-1 to prepare a quit claim deed ("QCD") from Abramov as to Unit 606 with directions to "[t]ake out [Abramov]" and a QCD from Perevalov as to Units 1616 & 1617 with directions to "[t]ake out [Perevalov]" deeming them "a serious thing we need to complete ASAP." *Id*.

From the end of March 2018 until June 2018, the Defendant sought documents from Law Firm-1 to be signed by Abramov and Perevalov so that he could transact in the Blocked Properties on their behalf. *Id*. The Defendant sought to sell Unit 606 and manage and lease Units 1616 & 1617. *Id*.

On May 5, 2018, the Defendant emailed Abramov's assistant stating that the Defendant required a power of attorney from Abramov and warned that without it "all his [Abramov's] money and apartment will be taken away from him!" *Id.* In May 2018 and June 2018, the Defendant, with the legal services of Law Firm-1, obtained powers of attorney from Abramov and his wife enabling him to sell, transfer, manage, operate, and lease Unit 606 as well as to collect and receive money from its sale, transfer, or lease. *Id.*

On May 27, 2018, in an email to a real estate agent for a potential buyer of Unit 606, the Defendant falsely stated that Abramov's wife was the unit's sole owner despite knowing Miami-Dade County public records still listed Abramov as an owner of Unit 606. *Id.* at 7. The Defendant wrote, "The seller on the contract is [full name of Abramov's wife]. *Id.* Nobody else, no matter what you see in the Public Records." *Id.*

On June 6, 2018, the Defendant, through and with the legal services of Attorney-1 and Law Firm-1, arranged the transfer of Abramov's ownership interest in Unit 606 to Abramov's wife in violation of the January 2018 Sanctions. *Id.* The Defendant provided Abramov with the deed, prepared by Law Firm-1, to remove Abramov's name from Miami-Dade County public records. *Id.* Notwithstanding Abramov's transfer of his ownership interest in Unit 606 to his wife on June 6, 2018, under OFAC's rules, Abramov continued to own Unit 606 until March 2019 because the January 2018 Sanctions precluded Abramov from transferring Unit 606. *Id.*

At various times between June 2018 and March 2019, the Defendant made monthly U.S.-dollar payments towards Unit 606's condominium association fees on behalf Abramov and his wife. *Id.* In January 2019, the Defendant entered negotiations to sell Unit 606. *Id.* The Defendant planned to use Attorney-1 as closing agent. *Id.* However, after Attorney-1 expressed concerns about sending proceeds from the Unit 606 sale to Abramov's wife in Russia, the Defendant

engaged another attorney, Attorney-2, as closing agent. *Id*.

In February 2019, anticipating the sale of Unit 606, the Defendant emailed Attorney-2 certain costs to deduct from the gross sale proceeds. *Id*. at 8. These costs included the Defendant's reimbursement for condominium association fees that he had paid after the Abramov Accounts were frozen, and Real Estate Company-1's commission. *Id*.

On March 4, 2019, in response to an inquiry from Attorney-2, the Defendant confirmed that Abramov was sanctioned and that he remained a beneficial owner of Unit 606. *Id*. The Defendant wrote that Abramov "got to know about his name in the sanction list about a year ago, roughly in April-May," but that Abramov "didn't inform us about that since he didn't look at this as it has anything to do with sale and service of his apartment he bought in 1998." *Id*. On March 4, 2019, the Defendant emailed Abramov's assistant, telling him that Attorney-2 had learned that Abramov was sanctioned. *Id*. The Defendant sent Abramov's assistant a backdated listing agreement and backdated property management agreement for Unit 606. *Id*. The Defendant explained that he needed Abramov and his wife to sign the documents to reflect that he had been "selling this apartment long before [Abramov] was included in the sanctions list." *Id*. The next day, the Defendant forwarded Attorney-2 executed versions of the backdated listing and property management agreements from Abramov and his wife. *Id*.

On March 19, 2019, the Defendant helped Abramov and his wife sell Unit 606 for over $1.23 million to two U.S. persons in violation of E.O. 13685. *Id*. The Defendant facilitated the sale and transfer of the net sale proceeds to Abramov's wife. *Id*. The executed settlement statement stated that the seller was to receive $868,922.10. *Id*. Real Estate Company-1, the Defendant's company, was to receive $64,720.80 for "Reimb. Of Servicing (2 years)." *Id*. Further, Real Estate Company-1 was to receive $55,654.65 as a sales commission and $995 for

reimbursement of a processing fee. *Id*.

On March 29, 2019, Attorney-2 wired $868,922.10 to a Polish bank account under Abramov's wife's control. *Id*. at 9. Attorney-2 also wired $64,720.80 into a U.S. bank account in the Defendant's name. *Id*. at 9. The instructions stated: "Reimbursement of Advances [Abramov's wife]: 2600 Island Blvd #606, Aventura, FL 33160." *Id*. On March 29, 2019, Attorney-2 wrote a check to Real Estate Company-1 for $56,649.65 (representing $55,654.65 for commission plus the $995 processing fee). *Id*. The memo line for the check stated, "Residential Closing." *Id*. Altogether, the Defendant received $121,420.45 from the sale of Unit 606. *Id*.

<u>Units 1616 & 1617</u>

The Defendant acted as a real estate broker for Perevalov in connection with Units 1616 & 1617. *Id*. Beginning in 2014, the Defendant leased the units as short- term rentals. *Id*. Commencing in or around March 2018, through and with the legal services of Attorney-1 and Law Firm-1, the Defendant sought to obscure Perevalov's ownership interest in Units 1616 & 1617 so that he could continue managing and leasing them. *Id*.

On March 30, 2018, the Defendant asked Attorney-1 to prepare a QCD for Units 1616 & 1617. *Id*. The Defendant wrote that he wanted Attorney-1 to "[t]ake out [Perevalov.]" *Id*.

On April 10, 2018, 1616 Collins LLC was formed as a Delaware entity, at least in part to evade sanctions against Perevalov. *Id*. The Defendant was a manager of 1616 Collins LLC. *Id*. Attorney-1 and Law Firm-1 drafted and filed the corporate formation documents. *Id*. At the time of the entity's formation, the nominal owner of 1616 Collins LLC was a minor. *Id*.

On June 13, 2018, the Defendant opened a bank account at Bank-2 in the name of 1616 Collins LLC. *Id*. at 10.

On June 14, 2018 — 139 days after Perevalov's SDN designation — the Defendant,

through and with the legal services of Attorney-1 and Law Firm-1, transferred Units 1616 & 1617 to 1616 Collins LLC in violation of E.O. 13685. *Id*. According to the transfer deed, the Defendant served both sides of the transaction — as power of attorney for Perevalov and his wife (the transferors) and as a manager of 1616 Collins LLC (the transferee). *Id*.

The Defendant and Law Firm-1 fraudulently made the transfer of Units 1616 & 1617 appear to be a sale. *Id*. On September 20, 2018, Attorney-1 wrote to the Defendant and others that if Perevalov and his wife "don't want to tell the whole world their business then they need to give it consideration so that nosy people will not necessarily be able to tell right away that they haven't transferred it to a third party." *Id*. Three days later, Attorney-1 added, "If they want confidentiality then they pay the documentary stamps so that it appears as an arm's length transaction to someone snooping around." *Id*. The Defendant responded the same day, "We'll pay it. Just do it ASAP so that any names disappear." *Id*.

On October 22, 2018, Law Firm-1 paid a documentary stamp tax of $8,400 to record the fraudulent warranty deed for Units 1616 & 1617 with the Miami-Dade County Clerk's Office, creating the impression that the units were sold for $1.4 million. *Id*. Miami-Dade County records consequently inaccurately listed the units as having been sold to 1616 Collins LLC for $1,400,000. *Id*. However, no such sale occurred. *Id*.

Between January 2018 and March 2023, while 1616 Collins LLC was the nominal owner of Units 1616 & 1617, the Defendant managed Units 1616 & 1617 in violation of E.O. 13685. *Id*. At numerous times, he arranged for Units 1616 & 1617 to be leased and collected rent payments on behalf of 1616 Collins LLC. *Id*.

While managing Units 1616 & 1617, the Defendant continued to obscure Perevalov's ownership interest in the units. *Id*. at 11. For example, in October 2019, the Defendant complained

to building management that the units were in the building's system "under the old owners" despite the ownership having been "changed 2 years ago" to 1616 Collins LLC. *Id*. Despite the purported change in ownership, utility bills for Units 1616 & 1617 continued to be addressed to Perevalov until July 20, 2020, more than two years after Units 1616 & 1617 were transferred to 1616 Collins LLC. *Id*.

The Defendant and others financially benefited from the transfer of Units 1616 & 1617 to 1616 Collins LLC and continued leasing of Units 1616 & 1617, in violation of the January 2018 Sanctions. *Id*. From February 22, 2019, through June 11, 2021, the Defendant received $61,072 from renting out Units 1616 & 1617 on behalf of Perevalov through 1616 Collins LLC. *Id*. As manager of 1616 Collins LLC, the Defendant transferred these funds at various times as management fees into U.S. bank accounts under his control. *Id*.

On March 9, 2023, OFAC sent the Defendant, as manager of 1616 Collins LLC, a third-party blocking notification informing him that Units 1616 & 1617 were blocked property because of Perevalov's ownership interest and that unauthorized transactions in blocked property could result in both civil and criminal penalties. *Id*.

<u>Monetary Transactions</u>

The Defendant engaged in several monetary transactions to achieve the objectives of the conspiracy charged in the Information, including in pertinent part, the below transactions:

- On April 1, 2019, the Defendant received $56,649.65 in proceeds from the Unit 606 sale, which were wired into Bank-1 account ending in x5969 controlled by the Defendant. *Id*.
- On April 1, 2019, the Defendant received $64,720.80 in proceeds from the Unit 606 sale, which were wired into Bank-2 account ending in x5150 controlled by the

Defendant. *Id*.

- On October 28, 2019, the Defendant deposited a $15,000 check consisting of rental proceeds from Units 1616 & 1617 into the 1616 Collins Account. *Id*. at 12.
- On December 23, 2019, the Defendant deposited a $16,000 check consisting of rental proceeds from Units 1616 & 1617 into the 1616 Collins Account. *Id*.
- On June 14, 2021, the Defendant deposited a $9,000 check consisting of rental proceeds from Units 1616 & 1617 into the 1616 Collins Account. *Id*.
- On June 14, 2021, the Defendant deposited a $8,500 check consisting of rental proceeds from Units 1616 & 1617 into the 1616 Collins Account. *Id*.
- On or about January 3, 2022, the Defendant used rental proceeds of Units 1616 & 1617 to pay a $511.30 condominium association fee for Units 1616 & 1617. *Id*.

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion is **GRANTED**, and it is **ORDERED AND ADJUDGED** that:

1. Pursuant to 18 U.S.C. § 981(a)(1)(C) and Rule 32.2 of the Federal Rules of Criminal Procedure, a forfeiture money judgment in the amount of $182,442.45 is entered against the Defendant.

2. The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

3. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

4. The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend

this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

**DONE AND ORDERED** in Chambers, at Miami, Florida, on February 21, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Cc: counsel of record